# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DAVID B. STARKEY | ) |
| | ) |
| v. | ) NO. 3:17-0511 |
| | ) |
| BANK OF AMERICA, N.A. | ) |

TO: Honorable William L. Campbell, Jr., District Judge

## R E P O R T  A N D  R E C O M M E N D A T I O N

By Order entered March 17, 2017 (Docket Entry No. 4), the Court referred this action to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending is Defendant's Motion to Dismiss (Docket Entry No. 12), to which Plaintiff has filed a response in opposition (Docket Entry Nos. 18-19). For the reasons set out below, the undersigned respectfully recommends that the motion to dismiss be granted and this action be dismissed.

## I. BACKGROUND

David B. Starkey ("Plaintiff") is a resident of Rutherford County, Tennessee. On March 13, 2017, he filed this *pro se* lawsuit against Bank of America, N.A. ("BANA") and "Does 1-100." *See* Complaint (Docket Entry No. 1). He asserts federal question jurisdiction under 28 U.S.C. § 1331 and brings claims for "rescission enforcement" (Count I) and "recoupment/set-off" (Count II). He also seeks a declaratory judgment: (1) to compel production and/or compel inspection of documents; (2) to determine the legal holder in due course of a promissory note; and, (3) to quiet title to property. *See* Complaint at 1.

Plaintiff's complaint is 33 pages long and is accompanied by 99 pages of exhibits. Although the complaint clearly pertains to Plaintiff's residence and real property located at 3614 Lascassas Pike, Lascassas, Tennessee ("the Property"), Plaintiff fails to include in his complaint a separate statement

that sets out the factual background of the case. Instead, Plaintiff includes scattered factual allegations in the recitation of his legal claims.

Nonetheless, the relevant background facts gleaned from the complaint and attachments show that Plaintiff obtained a loan ("the Loan") from First Magnus Financial Corporation ("First Magnus") on April 27, 2007, for the amount of $417,000.00 in order to purchase the Property. Plaintiff entered into a promissory note ("the Note") for the amount of indebtedness and also granted to First Magnus a security interest in the property via a deed of trust ("the DOT"). *See* Attachments to Complaint, Docket Entry No. 1 at 65-82. In the DOT, Mortgage Electronic Registration Systems, Inc. ("MERS"), is made the beneficiary of the DOT as the nominee of First Magnus and its successors and assigns. *Id*. at 66. The DOT was recorded in Rutherford County, Tennessee, on April 30, 2007.

At some point in time, BAC Home Loans Servicing, LP ("BAC Home Loans") became the loan servicer, and later BANA, which succeeded BAC Home Loans by merger. During 2009, the Loan went into default and BANA took steps to initiate a non-judicial foreclosure on the Property in 2010. *See* Complaint at ¶ 11. These events led to the first round of litigation concerning the Property when Plaintiff filed a *pro se* case in the Chancery Court for Rutherford County, Tennessee on May 17, 2011 ("the 2011 Case"). The case was subsequently removed to this Court. *See David B. Starkey v. First Magnus Financial Corp., et al.*, No. 3:11-1217. In the 2011 Case, Plaintiff sought: (1) injunctive relief to prevent the defendants[1] from taking actions to enforce the terms of the loan documents, a "determination and declaration of the parties' respective rights and duties," and an order to establish and quiet title to the property at issue; and, (2) $5,328,093.60 in damages based upon a claim of "sweat equity lien [mechanics lien]." *See* Docket Entry No. 1-2, at 5-6 in the 2011 Case.[2] By Order entered September 28, 2012, the 2011 Case was dismissed in favor of the defendants. BANA and

---

[1] Named as defendants in the 2011 Case were: First Magnus, Stonecrest Title Escrow Co., LLC. ("Stonecrest"), MERS, BAC Home Loans, and Wilson & Associates, PLLC.

[2] The Court notes that Plaintiff asserted in his pleading in the 2011 Case that, as evidence of the loan transaction, he signed and delivered to First Magnus the Note and that, to secure payment of the Note, he signed and delivered to First Magnus the DOT. *See* Docket Entry No. 1-2 at 2-3, ¶¶ 6-7 in the 2011 Case.

MERS were dismissed with prejudice upon their filing of a motion to dismiss and First Magnus and Stonecrest Title Escrow Co., LLC, were dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure because they had not been served with process.[3] *See* Docket Entry No. 19 in the 2011 Case. Plaintiff did not appeal the dismissal of the 2011 Case.

The exact steps taken by BANA subsequent to the dismissal of the 2011 Case are not entirely clear but it appears that: (1) BANA communicated with Plaintiff through a letter dated December 6, 2012, that the Loan remained in default, as of October 2009 through December 2012, but that there was not a foreclosure sale date scheduled, *see* Exhibit B to Complaint at 83-85; (2) BANA sent to Plaintiff some type of letter on November 15, 2013, offering him the opportunity to apply for a loan modification program, *see* Exhibit I to Complaint at 102; and (3) BANA sent to Plaintiff a payoff statement for the Loan dated January 6, 2014, stating that the Loan was in foreclosure and that the total amount required to release the lien as of the date of the statement was $533,635.42. *See* Exhibit K to Complaint at 123. Additionally, on July 13, 2016, MERS, as nominee for First Magnus, assigned and transferred to BANA all its rights, title, and interest in and to the mortgage executed by Plaintiff and recorded as the DOT. This assignment was subsequently recorded on July 25, 2016. *See* Exhibit G to Complaint at 92-93. Plaintiff avers that BANA has "initiated non-judicial foreclosure proceedings" with regard to the Property, *see* Complaint at 22, ¶ 56, but does not state in the Complaint what specifically has occurred with respect to "foreclosure proceedings" or state that a sale has actually been scheduled. There are no documents attached to the Complaint shedding light on the status of any current foreclosure proceedings.

In the several years after his 2011 Case was dismissed, Plaintiff appears to have continuously resided in the Property. However, there is no indication that he cured the arrears on the Note or made current payments on the Note. *See* Complaint at 26-27 at ¶ 79. Nonetheless, attachments to Plaintiff's complaint show that, between 2012 and 2014, he was active in creating and recording the

---

[3] Wilson & Associates, PLLC, was dismissed upon its motion prior to the 2011 Case being removed to this Court.

following filings with the Rutherford County Register of Deeds Office that pertain to the Property, the DOT, and the Note:

1. UCC Financing Statement - filed November 16, 2012;[4]
2. Notice of Acceptance of Warranty Deed - filed August 23, 2013;[5]
3. Notice of Dispute; demand for Validation and Proof of Claim - filed December 4, 2013;[6]
4. UCC Financing Statement Amendment - filed January 3, 2014;[7]
5. Notice of Fault in Dishonor (Opportunity to Cure) - filed January 21, 2014;[8]
6. UCC Financing Statement Amendment - filed January 21, 2014;[9]
7. Notice of Self-Executing Conditional Acceptance - filed January 24, 2014;[10]
8. Notice of Recision - filed April 4, 2014;[11]
9. Affidavit of Revocation of Signature for Good Cause - filed April 4, 2014;[12] and
10. Notice in Support of Notice of Recision - filed May 27, 2014.[13]

The crux of Plaintiff's complaint are his apparent contentions that: (1) the DOT and the Note are not enforceable against him; (2) he is due a recoupment of any and all proceeds BANA has obtained related to the Note; and (3) he is entitled to have title and possession of the Property transferred to him free and clear of any infringement or interest of BANA. *See* Complaint at 31-32.

---

[4] *See* Docket Entry No. 1 at 95-96.

[5] *Id.* at 128-132.

[6] *Id*. at 102-108.

[7] *Id*. at 98.

[8] *Id*. at 110-119.

[9] *Id*. at 100.

[10] *Id*. at 121-123.

[11] *Id*. at 36-45.

[12] *Id*. at 87-90.

[13] *Id*. at 50-63.

4

These ultimate contentions are based upon a series of interweaving arguments that are summarized as follows. Plaintiff argues that he rescinded the mortgage transaction in accordance with the Truth in Lending Act ("TILA").[14] He further argues that the mortgage transaction was not actually a residential mortgage transaction, but was instead an investment contract and a securities transaction for which BANA failed to make required filings.[15] Plaintiff contends that it was fraudulent to not inform him that his mortgage was a securities transaction and that he was made a third-party beneficiary of the investment contract.[16] Plaintiff also argues that he is (1) the "Issuer, Drawer, Maker" and the "creditor and entitlement holder" for the Note, (2) an "investor" in the investment contract, and (3) a secured creditor in the Note, and as such, he is entitled to both funds and proceeds from the sale of the Note and a recoupment of funds he has paid to BANA.[17] Plaintiff contends that BANA is not the legal holder in due course of the Note, cannot produce the original copy of the Note, and has no legal right to enforce the DOT regarding the Property.[18] Finally, Plaintiff contends that he is entitled to a declaration quieting title to the Property because he has superior title to the Property by virtue of the UCC filing on the Note and his acceptance of a Warranty Deed on the property executed in conjunction with the 2007 mortgage transaction.[19]

## II. MOTION TO DISMISS AND RESPONSE

In lieu of an answer, Defendant BANA seeks dismissal of the complaint. BANA argues Plaintiff's rescission claim fails because it is untimely and because Plaintiff's loan is an exempted transaction. BANA contends that Plaintiff's recoupment/setoff claim fails because he provides no

---

[14] See Complaint at ¶¶ 7-15.

[15] *Id*. at ¶¶ 16-25

[16] *Id*.

[17] *Id*. at ¶¶ 26-46.

[18] *Id*. at ¶¶ 52-66 and 67-83.

[19] *Id*. at ¶¶ 67-83.

5

legal basis for a setoff of his account. Regarding Plaintiff's requests for declaratory judgments, BANA argues that Plaintiff's request to compel production of documents is not a cognizable cause of action and that Plaintiff's request to determine whether BANA is a legal holder in due course fails to state a cause of action. Lastly, BANA argues that Plaintiff has not supported a request to quiet title to the Property and that the separation of the note and mortgage fails to provide a basis to quiet title. *See* Defendant's Memorandum in Support (Docket Entry No. 22).[20]

In response, Plaintiff has filed a lengthy [21] supporting memorandum disputing the arguments for dismissal set forth by Defendant BANA. He essentially expounds upon the arguments set out in his complaint and offers additional arguments for his claims and his contention that he has alleged facts sufficient to state claims for relief that survive the motion to dismiss. He has also filed as part of his response his own Affidavit of Truth (Docket Entry No. 26), to which he has attached several documents as exhibits. *See* Docket Entry No. 26 at 9-46.

### III. STANDARD OF REVIEW

Rule 12(b)(6) provides for the dismissal of a complaint when a plaintiff fails to state a claim upon which relief can be granted. To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id*. (citing *Twombly*, 550 U.S. at 556).

---

[20] In response to BANA's original motion to dismiss, Plaintiff moved for leave to amend his pleadings. Plaintiff's motion was granted and BANA's motion to dismiss was denied without prejudice. *See* Order entered October 13, 2017 (Docket Entry No. 20). However, Plaintiff failed to actually file an amended complaint by the Court imposed deadline, rendering his original complaint the operative pleading and prompting BANA to renew its prior motion to dismiss. *See* Order entered November 16, 2017 (Docket Entry No. 23).

[21] Although Local Rule of Court 7.01(e)(1) states that supporting briefs shall not exceed 25 pages unless leave of the Court is obtained, Plaintiff's supporting memorandum is 43 pages long.

When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). "Mere conclusions," however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. While the Court must liberally construe documents filed by a *pro se* plaintiff, *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), a complaint filed by a *pro se* plaintiff must still plead sufficiently specific factual allegations, not just legal conclusions, in support of each claim, *see Iqbal*, 556 U.S. at 678-679, and the "lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Although a court typically cannot consider "matters outside of the pleadings" when deciding a motion to dismiss, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), there are several exceptions to this general rule. Exhibits to the pleadings are "part of the pleadings for all purposes." Rule 10(c) of the Federal Rules of Civil Procedure. Additionally, a court may consider "materials that are public records or otherwise appropriate for taking judicial notice." *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F.Supp.2d 914, 925 (N.D. Ohio 2009). *See also Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("[A] court may take judicial notice of other court proceedings without converting the motion into one for summary judgment."). Accordingly, the Court has reviewed and considered the multiple exhibits to Plaintiff's filings, as well as certain filings made in the public record in the 2011 Case.

## IV. ANALYSIS AND RECOMMENDATIONS

### A. Rescission

Plaintiff seeks to enforce rescission of the DOT and Note under the TILA, contending that he was not delivered certain disclosures required under the TILA. This count for relief is without merit. The right of rescission provided for in Section 1635 of the TILA "expire[s] three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f); *See* 12 C.F.R. § 226.23(a)(3). This provision goes beyond the standard statute of limitations, extinguishing not only the plaintiff's ability to bring a lawsuit but also his "underlying

7

right" to rescind the transaction at issue. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998); *Chapman v. JPMorgan Chase Bank, N.A.*, 651 Fed.App'x 508, 512 (6th Cir. 2016); *Gilliard v. Recontrust Co.*, 2012 WL 4442525 at *4 (E.D. Tenn. Sept. 25, 2012). The transaction at issue occurred on April 27, 2007. Any right of rescission that possibly existed under the TILA expired three years subsequent to that date, well before Plaintiff recorded and notified BANA of his Notice of Rescission on April 4, 2014. This count should be dismissed.

There is no merit to Plaintiff's arguments that the loan transaction was not consummated in April 2007. Plaintiff signed the DOT and Note on April 27, 2007, received funding to purchase the Property, and became obligated to pay back the borrowed funds. Thus, the loan transaction was consummated at this time. *See United States v. Petroff–Kline*, 557 F.3d 285, 296 (6th Cir. 2009) (consummation occurs when a borrower signs the loan documents and becomes obligated to pay). Plaintiff contends that (1) his signature on the documents is negated by the recording of his Affidavit of Revocation, and, (2) there was no consideration involved in the transaction because BANA has not taken steps to "verify" the Note or DOT in response to his recording of a Notice of Fault in Dishonor. These contentions are legally spurious and provide no plausible legal basis supporting his rescission count. Additionally, the type of argument made by Plaintiff in which he asserts there was a lack of consummation because of the undisclosed nature of the funding source has been rejected, *see Chapman*, 651 Fed.App'x. at 512-13 (rejecting the "failure to disclose true lender" theory as basis to extend right of rescission), as have the type of fraud theories advanced by Plaintiff, *see Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 752 (6th Cir. 2014) (rejecting theories of fraud based on allegations the true lender was not disclosed or that the loan would subsequently be sold and securitized as part of a mortgage-related security).[22]

---

[22] Because the Court finds that Plaintiff's right of rescission clearly expired prior to being asserted, it is not necessary to address Defendant's alternative argument that the TILA right of rescission does not apply because a mortgage transaction is involved.

## B. Recoupment

Plaintiff has expended great effort mixing together various provisions of Tennessee's Uniform Commercial Code in an attempt to make a proverbial silk purse out of the sow's ear of his situation. He appears to argue that he is, at the same time, both the payor and the payee on the Note and, thus, has an entitlement to the proceeds from the note and a right to recoupment of the amounts he paid on the note. *See* Complaint at ¶¶ 41-43. He further argues that the mortgage transaction is actually an investment contract to which he was made a third party beneficiary and that he is entitled to proceeds from the sale of the Note. *Id*. at ¶ 44.

With all due respect to Plaintiff, his recoupment and related arguments are legally baseless and deserve minimal comment from the Court. His hodgepodge of citations to statutory provisions is meaningful to only him, and lend no support to Plaintiff's pseudo argument. Furthermore, it is well settled that the subsequent securitization of a mortgage does not render the note or deed of trust unenforceable and does not alter the borrower's obligation to pay back the loan. *Dauenhauer v. Bank of New York Mellon*, 562 Fed.App'x 473, 480 (6th Cir. 2014). Similarly, a mortgagor is not a party to any subsequent securitization of his mortgage and holds no rights related to any mortgage-related security or investment trust that arises after securitization. *Thompson*, 773 F.3d at 749; *Ridley v. Bank of Am.*, 2015 WL 11109363 at *4 (E.D. Tenn. Aug. 11, 2015) (mortgagor cannot claim that she is a third party beneficiary to the Pooling and Service Agreement ). Finally, there is no fraud or illicit taint to a mortgage transaction that arises from the subsequent securitization of a mortgage transaction, *Thompson*, *supra.*, or the table funding of a mortgage. *Thompson v. Am. Mortg. Exp. Corp.*, 2014 WL 1631001, at *2 (M.D. Tenn. Apr. 23, 2014), *aff'd sub nom. Thompson*, *supra*. This count should be dismissed.

## C. Declaratory Judgment - Document Inspection

Plaintiff's request for an order compelling BANA to produce documents for him to inspect has no legal merit and should be dismissed. First, an order compelling the production of documents for inspection in the manner requested by Plaintiff does not fall within the purview of an order

granting declaratory relief. As pointed out by Defendant BANA, Plaintiff's request is essentially akin to a request for an order compelling discovery. Further, although Plaintiff asserts in his response in opposition that he is entitled to inspection of documents "according to the Privacy Act, Title 5 U.S.C. § 552(a) and other Federal and State law," *see* Docket Entry No. 25 at 24, 5 U.S.C. § 552(a) applies only to public agencies and Plaintiff has not identified any specific Federal or State law that provides him with a legal basis to have the Court order that documents be produced for inspection as he requests.

**D. Declaratory Judgment - Holder In Due Course**

Plaintiff seeks a declaration that Defendant BANA has no legal rights to enforce the provisions of the Note and DOT. *See* Complaint at ¶ 59. Plaintiff argues that Defendant BANA "cannot produce proof of claim in the form of the true original wet ink promissory note and proof of the right to enforce said note," *id.* at ¶ 60 and further contends that Chapter III of the Tennessee Uniform Commercial Code requires Defendant BANA "to produce the true original negotiable note in court when seeking to recover upon it or when asked as well as the proof of loss and right to enforce the 'note.'" *Id.* at ¶ 64. Without delving into the issue of whether the declaratory relief sought by Plaintiff is even appropriate given the dearth of facts showing that a real legal controversy exists at this time because of actual steps by Defendant BANA to enforce the Note and DOT and/or because of any actual, as opposed to theoretical, foreclosure proceedings, the Court finds no merit in Plaintiff's arguments. Plaintiff's contention that BANA has no rights to enforce the Note and DOT is legally insufficient. Dismissal of this count is warranted.

In the Note, Plaintiff expressly waived the right to presentment. *See* Docket Entry No. 8-1 at 2, ¶ 9 in the 2011 Case ("I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. 'Presentment' means the right to require the Note Holder to demand payment of amounts due."). In such a situation, Tennessee law does not require a party seeking to enforce a negotiable instrument, such as a promissory note, to produce the actual

promissory note. *Donaldson v. BAC Home Loans Servicing, L.P.*, 813 F.Supp.2d 885, 894 (M.D. Tenn. 2011); *Christiansen v. Bank of Am.*, 2013 WL 140264 at *2 (M.D. Tenn. Jan. 10, 2013); *Dillard v. Suarez Serrano*, 2013 WL 12043557 at *7 (W.D. Tenn. Mar. 1, 2013); *Gibson v. Mortg. Elec. Registration Sys., Inc.*, 2012 WL 1601313 at *5 (W.D. Tenn. May 7, 2012); *Aurora Loan Servs., LLC v. Woody*, 2014 WL 7463032 at *12 (Tenn.Ct.App. Dec. 30, 2014).

Furthermore, enforcement of a negotiable instrument under Tennessee law is not limited to only those who have the status of an owner or holder in due course, or an agent thereof. *Anderson v. Nelson,* 1995 WL 495924 at *2 (Tenn.Ct.App. Aug. 21, 1995); *Gibson*, *supra*. The mere transfer of a note is sufficient to permit the transferee to enforce the note's obligations. *Aurora Loan Servs.*, 2014 WL 7463032 at **10-11. Regardless of any other preceding events that may be sufficient to bestow upon Defendant BANA a right to enforce the Note and its obligations, on July 13, 2016, BANA was assigned and transferred all rights, title, and interest in the mortgage transaction at issue by virtue of the assignment from First Magnus through MERS as its nominee.[23] *See* Docket Entry No. 1 at 92. Such assignment and transfer is specifically permitted by the terms of the Note. *See* Docket Entry No. 8-1 at 1, ¶ 1 in the 2011 Case ("I understand that the Lender may transfer this Note."). BANA's legal standing to enforce the note and DOT rests on a sound foundation.

**E. Declaratory Judgment - Quiet Title**

A claim to quiet title must be based upon some plausible assertion that legal title to the property in question is unclear, disputed, or encumbered in some manner. Further, a party wishing to quiet title must show that he has superior title against any other claimants. *Thompson*, 773 F.3d at 750 (citing *Hoyal v. Bryson*, 53 Tenn. 139, 141 (1871)). These requirements have not been met by Plaintiff, and this count should be dismissed.

---

[23] As stated in *Dauenhauer*, in upholding MERS' role as a nominee entitled to assign a note and deed of trust, "[c]ourts nationally, including Tennessee's, have consistently approved MERS' role in loans when designated as the nominee and beneficiary under a deed of trust." 562 Fed.App'x. at 479.

The Court views the decision in *Thompson* as squarely on point and as controlling for the quiet title claim brought by Plaintiff. As the Sixth Circuit succinctly stated in *Thompson*:

> when a borrower obtains a mortgage loan to buy the house, the lender, the holder of the note, has title to the property. The borrower must satisfy her mortgage debt in order to obtain title . . . . Until the note is satisfied, the holder of the note has superior title to the property.

773 F.3d at 750-51.

Plaintiff has not shown any plausible legal basis that he has title to the Property, let alone a superior title. At no point in the volumes of paper filed by Plaintiff has he shown that he has satisfied his obligation on the Note and, thus, acquired title to the Property. Indeed, his own allegations are that he has stopped making payments on the Note. The failure of Plaintiff to show that he has satisfied the obligation created by the Note is fatal to any claim he brings to quiet title to the Property. *Thompson*, *supra*. *See Layer-Rosario v. Allied Mortg. Capital Corp.*, 2018 WL 1989636 at *2 (6th Cir. Jan. 9, 2018); *Kebede v. Suntrust Mortg., Inc.*, 612 Fed. App'x. 839, 841 (6th Cir. 2015); *Phillips v. Nationstar Mortg.*, 2016 WL 2866164 at *8 (M.D. Tenn. May 17, 2016); *Ridley*, *supra*.

Plaintiff's argument that he has a valid legal interest in the Property by virtue of the UCC financing statement he filed is nonsensical. Plaintiff, who is the borrower on the Note and who conveyed the Property through the DOT to secure the Note, cannot simply create for himself a superior interest in the Property by unilaterally filing a UCC financing statement in which he declares himself a secured party for the Property. Likewise, none of the other various filings recorded by Plaintiff have actual legal import or create for him a superior legal title to the Property. Nor does Plaintiff's continuing possession of the Property create for him a superior title to the Property based upon the facts of this case. Finally, Plaintiff conveyed whatever interest he had in the Property through the DOT to secure the Note and, thus, the Warranty Deed fails to create a superior claim to the Property.

## RECOMMENDATION

Based on the foregoing, the undersigned respectfully RECOMMENDS that the Motion to Dismiss (Docket Entry No. 12) of Bank of America, N.A. be GRANTED as to all claims advanced by Plaintiff and that this action be DISMISSED WITH PREJUDICE on the merits.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.03(b)(1). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after being served with a copy of such objections. *See* Federal Rule 72(b)(2) and Local Rule 72.03(b)(2).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge